**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000242
05-APR-2012
08:07 AM**

NO. CAAP-10-0000242

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DORA J. GRIFFIN, Petitioner-Appellee,
on behalf of MICHAEL E. GRIFFIN, a Minor, Subject,
v.
JEAN DAVENPORT, Respondent-Appellant.


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DOMESTIC ABUSE NO. 10-1-7071)


MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Respondent-Appellant Jean Davenport (Davenport) appeals
from an Order for Protection issued on November 12, 2010 by the
Family Court of the First Circuit (family court),[1] pursuant to
which, among other things, Davenport is precluded from contacting
the subject minor (Minor).  The Order for Protection is to remain
in effect for five years, until November 12, 2015.

On appeal, Davenport asserts the following points of
error: (1) the family court erred in granting the restraining
order in FC-DA No. 10-1-7071 because of the *res judicata* effect
of the dissolution of the temporary restraining order in a prior
case, FC-DA No. 10-1-6987; and (2) the family court erred in
ruling that *res judicata* was inapplicable to FC-DA No. 10-1-7071
because Petitioner-Appellee Dora J. Griffin (Griffin) was not
misled that Minor's dislocated elbow was caused by a fall, when

_____

[1]  The Honorable Sherri L. Iha presided.

Griffin already independently concluded how the injury occurred before proceeding with the prior case, FC-DA No. 10-1-6987.

For the reasons discussed below, we remand for further proceedings consistent with this opinion to determine if res judicata applies.

## I.  Background

On behalf of her son, Minor, then four-years old, Griffin filed two successive Petitions for an Order of Protection against Davenport in the family court.  Davenport, who used to be Minor's pre-school teacher, began a relationship with Minor's father, Darren Iwamoto, in March of 2010.

Griffin's first petition, in FC-DA No. 10-1-6987, was filed on October 8, 2010 alleging two incidents of abuse.  The first incident Griffin alleged was on September 27, 2010, as to which she asserted "my son's preschool administrator informed me that Jean Davenport had threatened to choke & stab him with a knife because of an argument between his father."  The second incident was alleged to have been in October of 2010 and Griffin asserted "my son said 'she choke me on my neck' after I asked him if Jean had ever touched him."  On October 8, 2010, a temporary restraining order (TRO) was issued and a hearing was set for October 18, 2010.

At the hearing on the first petition, Griffin, Davenport and Iwamoto testified.  Griffin represented to the family court that she had a witness who did not show up.  Griffin sought to present a letter from Kelly Shodahl (Shodahl), Davenport's "boss" at the preschool, but because Shodahl was not in court to testify, Griffin was not allowed to admit the letter into evidence.  The family court concluded at the end of the hearing that Griffin had not carried her burden of proof and issued an order that day, October 18, 2010, dissolving the TRO against Davenport due to insufficient evidence.

Griffin's second petition, in FC-DA No 10-1-7071, was filed eleven days later, on October 29, 2010, alleging three incidents of abuse.  The first alleged incident (which had not been alleged in the first petition) was in April of 2010 and

Griffin asserted that "Ms. Jean Davenport grab my son and dislocated his elbow when I asked his father what happen he told me he fell." The second alleged incident (previously alleged in the first petition) was in October of 2010 and Griffin asserted "my son said 'she choke me on my neck' after I asked him if Jean Davenport had ever touched him." The third alleged incident (similar to an incident alleged in the first petition) was in September of 2010 and Griffin asserted "Ms. Jean Davenport had threatened to take my son in a bathroom and beat him up also wanted to 'punch' um in the throat and stab him in the neck." A TRO was issued on October 29, 2010 and a hearing set for November 12, 2010.

At the hearing on the second petition, Griffin, Shodahl, Davenport and Iwamoto testified. During the hearing, Davenport argued that the prior TRO had been dissolved and that *res judicata* should apply. At the end of the hearing, the family court issued its ruling, as follows:

> THE COURT: The Court is going to find that -- that there was new evidence in this case that was not brought up in the original TRO or presented to Judge Aburano and was not available to Ms. Griffin prior to the filing of the first TRO, which was denied.
>
> The Court in this case is going to also find that the petitioner has proven the allegations and is going to grant this restraining order.

The Order for Protection was issued the same day, November 12, 2010, to be effective for five years.

In its Amended Findings of Fact and Conclusions of Law (Amended FOF/COL), the family court concluded that the acts by Davenport that constituted domestic abuse was "[t]he Arpil [sic] 25, 2010 incident that dislocated [Minor's] arm."

## II. *Res Judicata* In Domestic Abuse Cases

In her first point of error, Davenport argues that Tortorello v. Tortorello, 113 Hawaiʻi 432, 153 P.3d 1117 (2007) is on point as to application of *res judicata* in this case and that the family court thus committed reversible error in issuing the Order for Protection. Tortorello established that principles of *res judicata* apply in domestic abuse cases.

> *Res judicata*, or claim preclusion, is a doctrine "that limit[s] a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy." *Bremer v. Weeks*, 104 Hawai'i 43, 53, 85 P.3d 150, 160 (2004) (citation and footnote omitted). *Res judicata* "prohibits a party from relitigating a previously adjudicated cause of action." *Id.* (internal quotation marks and citation omitted). In addition,
>
>> the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning *the same subject matter*, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of *all grounds of claim* and defense *which might have been properly litigated in the first action* but were not litigated or decided.
>
> *Id.* at 53-54, 85 P.3d at 160-61 (citation, brackets, and some emphases omitted) (some emphases added). Finally,
>
>> [t]he party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) *the claim decided in the original suit is identical with the one presented in the action in question.*
>
> *Id.* at 54, 85 P.3d at 161 (emphasis added).

Id. at 439, 153 P.3d at 1124.

In Tortorello, the petitioner wife did not dispute that the first two prongs required for *res judicata* were met, but argued that the third prong was not met because the claim in the first suit was not identical with the claim in the second suit. The supreme court disagreed, stating that "[i]nasmuch as both Petitions sought an order of protection against Husband, the claim decided in Petition I is identical with the one presented in Petition II." Id.

Under the facts in Tortorello, the supreme court upheld application of *res judicata*, noting in part:

> To conclude as Wife desires in this case, that is, to allow the filing of successive petitions based on alleged past acts of abuse that could have been indicated in the earlier petition, would result in clogging the family courts with excessive hearings and straining the resources of not only the parties, but of the family and appellate courts of this state. Such potential problems are recognized in the policies behind *res judicata*, which, as previously mentioned, is a doctrine "that limit[s] a litigant to one opportunity to litigate aspects of the case *to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy.*" *Bremer*, 104 Hawai'i

> at 53, 85 P.3d at 160 (citation and footnote omitted)
> (emphasis added).

Id. at 441, 153 P.3d at 1126. Ultimately, therefore, the supreme court upheld the holding by this court that "the doctrine of *res judicata* 'applies to successive HRS [c]hapter 586 . . . protective order cases filed by the same petitioner against the same respondent where the second case is based on events that occurred, **and that the petitioner knew about**, prior to the filing of the first petition[.]'" Id. at 437, 153 P.3d at 1122 (emphasis added).

Although Tortorello recognized the application of *res judicata* in domestic abuse cases, in this case, the family court's Amended FOF/COL concluded that *res judicata* did not apply because Griffin was misled about the April 2010 incident, stating:

> Res Judicata does not apply because the Petitioner was deceived by Respondent into believing that [Minor's] arm was dislocated by a fall. Res judicata does not apply to bar a claim where the petitioner is ignorant of the existence of the claim due to the fault or fraud of the respondent. [See Bolte v. Aits, Inc. 60 Haw. 58, 587 P.2d 810 (1978)]. The court also notes that HRS § 586-5.5 specifically contemplates providing further relief from that provided by a temporary restraining order. The Respondent actively hid the information from the Petitioner. Therefore the Petitioner should not be precluded from moving for an Order of Protection on these grounds.

In Bolte v. Aits, Inc., 60 Haw. 58, 587 P.2d 810 (1978), the Hawai'i Supreme Court recognized that *res judicata* will not bar claims of which the plaintiff or petitioner was ignorant due to the fault or fraud of an adverse party. Id. at 62, 587 P.2d at 813-14. We therefore conclude that, although Davenport is correct that *res judicata* applies under Tortorello to domestic abuse cases, the key issue in this case is whether an exception to *res judicata* applies under Bolte.

### III. **Exception to *Res Judicata* Under Bolte**

In Bolte, the plaintiff brought two successive lawsuits alleging breach of the same contract. Under the contract, the plaintiff was entitled to commissions based on insurance premiums for a hotel. The first lawsuit sought commissions for a certain amount, and the second lawsuit sought additional commissions on

subsequent insurance placed on the hotel. 60 Haw. at 59, 587 P.2d at 812. There was conflicting evidence as to when the plaintiff knew about the second breach. Id.

In reviewing whether the circuit court erred in invoking *res judicata* to bar the second lawsuit, the supreme court held, in relevant part:

> We adhere to the rule adopted by the majority of jurisdictions that have dealt with the problem that a former recovery will not bar claims of which the plaintiff was ignorant, even if those claims existed at the time suit was commenced in the former recovery and could have been joined, unless plaintiff's ignorance was due to his own negligence. *The rule is also applicable if plaintiff's ignorance was due to the fault or fraud of an adverse party.*
>
> As noted above, the rule against splitting a cause of action is based on the salutary policy of preventing a multiplicity of vexatious lawsuits and harassment of the defendant. The rule presupposes the fact that the plaintiff is consciously acting inequitably in suing for only part of his claim, knowing that he was unnecessarily bringing vexatious lawsuits against the defendant or careless as to whether he was causing such vexation. The rule against splitting should not be so rigidly applied, however, to produce an injustice and thwart the policy upon which it was founded. *Thus, where the plaintiff is ignorant of a possible cause of action which existed at the time of commencement of a prior, related action, and he is not negligent in his ignorance or his ignorance was caused by the fraud or fault of the defendant, plaintiff's purpose in bringing the subsequent action will not be to consciously and unreasonably vex or harass the defendant.* Rather, plaintiff's purpose will merely be to enforce the alleged liability upon the defendant. Consequently, the rationale and rule against splitting a cause of action will be inapplicable.

Id. at 62-63, 587 P.2d at 813-14 (citations omitted) (emphasis added).

In <u>Bolte</u>, the trial court had granted summary judgment to the defendant based on *res judicata*, but there had been no determination, and apparently no undisputed evidence, as to when the second breach had occurred. Therefore, the supreme court remanded for further proceedings, stating:

> The issue as to when the second breach occurred is crucial to the Res judicata inquiry. If it occurred after the July 2, 1971 filing of the first suit in the district court, Res judicata and the rule against splitting a cause of action will not operate to bar the bringing of the second action. But, if the second breach occurred prior to the filing of the first suit in the district court, then, *dependent on whether plaintiff had knowledge of the second breach before the first suit was filed and whether his possible lack of knowledge was due to the negligence of plaintiff or the fault or fraud of defendant, the second suit may be barred.*

Id. at 64, 587 P.2d at 815 (emphasis added).

In her second point of error, Davenport argues that Griffin came to an independent conclusion that Davenport was involved in the April 2010 incident and thus should have been barred from raising it in the second petition. Davenport acknowledges that the family court made FOF's 4 and 5, which state:

> 4.    In April of 2010 Respondent caused an injury to [Minor's] arm.
>
> 5.    [Minor] was taken to Kaiser and treated for the injury. Petitioner was notified by Darren Iwamoto that [Minor] fell and was *intentionally misled as to the actual cause of the injury by Respondent and Darren Iwamoto.*

(Emphasis added). Davenport argues, however, that the family court also made the finding that, after being given a letter by Shodahl in September of 2010[2] that detailed Shodahl's concerns about Davenport becoming more aggressive towards Minor, Griffin came to an independent conclusion that day saying "[t]hat's how [Minor's] arm was dislocated." Davenport argues that, even if Griffin had been deceived, she was "no longer under that cloud of deception by September of 2010."

We cannot conclude that Griffin's statement to Shodahl required her to raise the April 2010 incident in the first petition. There is nothing in the record indicating that Shodahl's letter included any information about the April 2010 incident. Instead, Shodahl testified that her letter addressed her observations of Davenport's conduct at the preschool. The Petition For An Order For Protection On Behalf Of A Family Or Household Member (petition form) that Griffin was required to use in asserting her claims requires the petitioner to allege "under penalty of perjury" that the respondent "has abused the Subject and/or the listed family/household member(s) as follows[.]"

Therefore, although the family court's FOF 9 and 10 indicate that Griffin suspected as of September 22, 2010 that

---

[2]    The family court's FOF 9 and 10 indicate that Shodahl gave Griffin a letter on September 22, 2010, which was over two weeks before Griffin filed the first petition on October 8, 2010.

Davenport was involved in the April 2010 incident, Griffin reasonably could not make a claim against Davenport under penalty of perjury based on Shodahl's letter.

The issue thus turns on when Griffin learned from Shodahl that Davenport had confirmed being involved in the April 2010 incident when Minor's arm was dislocated. Similar to Bolte, we conclude that the record is unclear and the family court did not make essential factual findings that would support whether or not *res judicata* applies. The family court's relevant findings were:

> 8.      Kelle [sic] Shodahl observed Respondent becoming more aggressive towards [Minor] and not towards any other children.
>
> 9.      In September 2010, Kelle [sic] Shodahl told Darren Iwamoto that Respondent was becoming more aggressive towards [Minor].
>
> 9. [sic]      On September 21, 2010, Kelle [sic] Shodahl gave Darren Iwamoto a letter detailing her concerns. Darren Iwamoto's response was that it was just words and Respondent didn't mean anything by it.
>
> 10.      The following day Ms. Shodahl gave the same letter to Petitioner and Petitioner's [sic] responded by saying, *"That's how [Minor's] arm was dislocated."*
>
> 11.      *Ms. Shodahl then asked Respondent about the incident where [Minor's] arm was injured. Respondent confirmed that she had grabbed [Minor's] arm and it dislocated.*

(Emphasis added). At the hearing on the second petition, Griffin asserted that she had not raised the April 2010 incident in the first petition because she did not know about it at the time. Griffin stated at the hearing that she had just found out about it from Shodahl, who had asked Davenport if Davenport was the one that dislocated Minor's arm; Davenport allegedly responded to Shodahl in the affirmative and also told Shodahl that Griffin knew. Griffin asserted at the hearing that she did not know that Davenport was the one who dislocated Minor's arm and that when she learned that Davenport had confirmed it to Shodahl, she was very mad and told Shodahl she was going to get another restraining order. Griffin did not state when she learned that Davenport had confirmed being involved in the events resulting in

Minor's dislocated arm.  Moreover, the family court did not make any findings as to when Griffin learned this information.

Thus, in order to determine whether *res judicata* barred Griffin from asserting the April 2010 incident in the second petition, we remand this case to the family court to determine *when* Griffin learned that Davenport had been involved in the events of April 2010 leading to Minor's dislocated arm.  If Griffin learned this information *prior* to filing the first petition, her claims in the second petition regarding the April 2010 incident are barred by *res judicata*.

## IV.  Conclusion

We therefore remand this case to the family court for further proceedings consistent with this opinion.  If the family court finds that, *prior* to filing the first petition on October 8, 2010, Griffin had already learned that Davenport had been involved in the events of April 2010 leading to Minor's dislocated arm, the family court shall rescind the Order for Protection.

If, on the other hand, the family court finds that it was not until *after* the first petition was filed that Griffin learned about Davenport's involvement in the events of April 2010 leading to Minor's dislocated arm, then the family court may maintain the Order for Protection.

DATED:  Honolulu, Hawai'i, April 5, 2012.

On the briefs:

Harlan Y. Kimura
for Appellant

Chief Judge

Associate Judge

Associate Judge

9